UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIWOT ATAKILTI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BAYER U.S. LLC, et al.,<br><br>　　　　Defendants. | Case No. 21-cv-04057-CRB<br><br>**ORDER GRANTING MOTION FOR REMAND**<br><br>Re: Dkt. No. 5 |

Plaintiff Hiwot Atakilti is a California resident. She filed suit against Defendants Bayer U.S. LLC, Steve Flint, and Yaengsaeng Xayavong in Alameda County Superior Court, alleging various employment discrimination and harassment claims under state law. Defendants removed the case to federal court on the basis of diversity jurisdiction. While Flint and Xayavong are both California residents, Defendants' removal motion argues that they were fraudulently joined to defeat diversity jurisdiction. Plaintiff has now filed a motion to remand to state court, arguing that Flint and Xayavong were properly joined, thus defeating diversity jurisdiction. See Remand Motion ("Motion") (dkt. 5). For reasons explained below, the Court GRANTS the Motion.

**I.　BACKGROUND**

　**A.　Parties**

Bayer U.S. LLC is a Delaware corporation with its principal place of business in Pittsburg, Pennsylvania. See Complaint ¶ 2 (dkt. 1, Ex. A).[1] Steven Flint and Yaengsaeng

---

[1] The complaint is included as Exhibit A to the Notice of Removal. See Notice of Removal (dkt. 1) at 12. Consistent with the parties' briefs, the Order uses the paragraph numbers of that complaint.

Xayavong were Bayer employees during the relevant time period. Id. ¶¶ 2, 3–4. Both Flint and Xayavong reside in California. Id. Plaintiff is a former Bayer employee who resides in Alameda County, California. Id. ¶ 1.

### B. Dispute Between The Parties

Plaintiff is "a black female employee from Ethiopia" who began working at Bayer in 1999. Complaint ¶ 10.

In 2014, Plaintiff began reporting to Jeff Vo. Id. ¶ 13. She "was the only female" and "only non-Asian employee" on the team, and Vo allegedly assigned "higher priority projects" to her Asian co-workers. Id. ¶ 14. Plaintiff received projects that had the "same or substantially similar complexity" as her counterparts, but they were "lower priority and without strategic importance/value." Id. Despite completing similarly complex work, Plaintiff's pay "was kept as a M06 grade two level[s] down from her Asian peers." Id.

Around 2015, Bayer hired a "female Asian employee." Id. ¶ 15. The employee was paid more than Plaintiff, even though Plaintiff had four more years of experience. Id. Meanwhile, Plaintiff continued to be assigned to "low priority projects without visibility to key stakeholders," which began to prevent her advancement within the company. Id. ¶ 17. While Plaintiff continued to work on "low priority projects," her non-African American co-workers with "less experience" and "less seniority" received "promotions, raises, and assignments to higher profile projects." Id.

The issues with Vo continued over the next two years. See generally id. ¶¶ 18–32. Plaintiff raised "concerns about discrimination" with Human Resources team, but she felt that Human Resources did not fully investigate them. Id. ¶¶ 20–23. For instance, she met with "Human Resources Director Steven Flint," but rather than listen to Plaintiff, Flint "interrogated" her "until she was in tears and then returned back to work." Id. ¶ 24. After the meetings with Human Resources proved unfruitful, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Id. ¶ 25.

The issues worsened after Plaintiff filed her complaint. Id. ¶¶ 26–32. Vo did not allow team members to help Plaintiff complete her work, refused to reduce Plaintiff's

workload, and "stated due dates were not flexible when they were." Id. ¶¶ 34–37. After filing another EEOC complaint, Plaintiff had a "one-on-one meeting" with Vo during which he asked her "for feedback about him." Id. ¶ 39. Plaintiff gave Vo feedback about how he could "provide her with the same opportunities as her co-workers," but Vo "got agitated" and yelled at Plaintiff, "I want you out of my office." Id. Shortly after this meeting, Plaintiff asked Xayavong if "she would take over one-on-one meetings with her in place of Mr. Vo." Xayavong agreed to do so, becoming Plaintiff's immediate supervisor. Id.

In "early to mid-2018," Bayer "reorganized" and Plaintiff and her co-workers were moved to a new department. Id. ¶ 43. Plaintiff's team "was reduced from seven candidates to five" as part of the reorganization. Id. The five retained employees were "re-graded into higher positions," except for Plaintiff, even though she "was performing the same or similar work." Id.

In October 2018, Plaintiff met with "Ms. Stonebarger[2] and Ms. Xayavong" to discuss the discrepancy in her salary. Id. ¶ 44. She pointed out that "her new assignment was the same as her co-workers," but they were "working as a higher grade." Id. She asked why "she too had not received a pay increase," and requested a copy of her job description so that she could "evaluate whether or not there was a difference in the work she was completing with the work employees were doing at the VS 1.1 pay grade." Id.

Plaintiff still had not received answers to her questions as of January 2019. Id. ¶ 45. She then went to "the Director of Quality Systems and Compliance Lisette Gilchrist" to discuss her concerns. Id. Later that month, Xayavong sent an email that "accidentally carbon copied" Plaintiff and stated that Plaintiff "will be moved to VS 1.1. level as she is qualified for the next level." Id. ¶ 47. Plaintiff received a corresponding salary increase later that month. Id.

Xayavong sent Plaintiff an email that congratulated her on the promotion, but that

---

[2] The complaint does not identify Stonebarger's position at Bayer.

also "included negative feedback." Id. ¶ 48.  The "negative feedback" was that Plaintiff should continue to improve her communication and interactions with team members. Id. It was the first time Plaintiff "received feedback about her communication" in her twenty years at Bayer. Id.

Plaintiff alleges that Xayavong "continued to harass" her throughout 2019. Id. ¶ 49. For example, Xayavong "refused to approve [Plaintiff's] vacation request." Id. In addition, Bayer maintains a practice of "celebrating and paying for work anniversaries," and Plaintiff requested a "pizza party" to celebrate her "twenty-year work anniversary." Id. But Xayavong "did nothing to plan [Plaintiff's] twenty-year work anniversary" party, "all the while taking time to plan other events such as a trip to Six Flags for Bayer employees and their families." Id. ¶ 51. Plaintiff had her anniversary party several months later than planned, and Xayavong "failed to inform" Plaintiff's guests, so Plaintiff had to do it herself. Id.

From 2019 to 2020, Xayavong was openly and publicly critical of Plaintiff. Id. She would "downplay" Plaintiff's work contributions and imply that she "was not capable of performing her work" in front of her co-workers. Id. ¶ 53. Xayavong blamed Plaintiff for the "performance issues" of her co-workers, even "when she was not present and on vacation." Id. During meetings, Xayavong would tell others that Plaintiff "did not know what she was doing." Id. ¶ 56.

In January 2020, Xayavong announced that she was "leaving the group because she had accepted another position." Id. ¶ 56. Before leaving, she told the new managers that Plaintiff "was slow and incapable of doing her work." Id. Plaintiff reported this "false information" to Flint, but rather than addressing it, Flint advised that Plaintiff "go on leave." Id. ¶ 57. Plaintiff declined to do so. Id. Plaintiff was subsequently placed on paid administrative leave and has apparently not returned to work at Bayer since. Id. ¶¶ 58–60.

### C. Procedural History

Based on the foregoing allegations, Plaintiff filed a complaint against Bayer, Xayavong, and Flint (collectively, "Defendants") in Alameda County Superior Court.

4

Notice of Removal at 1–2.  The complaint brings claims for (1) racial discrimination, (2) gender discrimination, (3) marital status discrimination, (4) racial harassment, (5) failure to prevent and investigate discrimination, (6) retaliation, (7) Equal Pay Act violation, and (8) constructive discharge and wrongful termination against Defendants.  Complaint ¶¶ 62–145.  Defendants removed the case to federal court on May 27, 2021.  Notice of Removal at 1. The stated basis for removal is diversity jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1441(b).  Id.

## II.     LEGAL STANDARD

There is a "strong presumption" against removal jurisdiction and courts "strictly construe the removal statute against removal jurisdiction."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (per curiam).  A defendant bears the burden of establishing removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  Id.

Because the complaint in this case raises no federal questions, removal jurisdiction only exists if the parties are diverse.  "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—citizens of different states."  28 U.S.C. § 1332(a)(1).

Diversity jurisdiction requires complete diversity of the parties.  Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996).  However, "[a] defendant may remove a case with a non-diverse defendant on the basis of diversity jurisdiction and seek to persuade the district court that the defendant was fraudulently joined."  Diaz v. Allstate Ins. Group, 185 F.R.D. 581, 586 (C.D. Cal. 1998) (citing McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)).  To establish that a non-diverse defendant was fraudulently joined, the removing party must show "there is no possibility that plaintiff will be able to establish a cause of action in State court against the alleged sham defendant."  Tipton v. Airport Terminal Servs., Inc., No. 2:18-CV-09503-AB-JEM, 2019 WL 185687, at *3 (C.D. Cal. Jan. 14, 2019).  "If there is a non-fanciful possibility that plaintiff can state a claim under

California law against the non-diverse defendants the court must remand." Macey v. Allstate Prop. & Cas. Ins. Co., 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002).

**III.   DISCUSSION**

Plaintiff moves to remand the case to state court, arguing that the parties are non-diverse, thus defeating diversity jurisdiction. See Motion at 8–11. Defendants, in response, argue that the two non-diverse Defendants—Flint and Xayavong—were fraudulently joined and, as a result, neither should be considered for purposes of determining diversity jurisdiction. Opposition to Remand ("Opp.") (dkt. 7) at 5–7.

For reasons explained below, Plaintiff may be able to state a claim for racial harassment under California's Fair Employment and Housing Act ("FEHA") at least against Xayavong. Thus, Defendants fail to show that Xayavong was fraudulently joined, and remand is warranted.[3]

**A.   Applicable Legal Framework**

Plaintiff alleges that Xayavong harassed Plaintiff based on race in violation of FEHA. Id. ¶¶ 98–111. Defendants argue that Plaintiff cannot state racial harassment claims under FEHA against Xayavong because all of the alleged harassment involved official employment actions. Opp. at 5–7. Defendants argue that under FEHA, claims based on official employment actions are discrimination claims that can only be brought against employers, not individual employees like Xayavong. Id.

FEHA prohibits both discrimination and harassment based on race. However, FEHA makes an important distinction between the two causes of action. See Roby v. McKesson Corp., 47 Cal. 4th 686, 705 (2009). Under FEHA, it is unlawful for "an employer" to discriminate, while it is unlawful for "an employer" or "any other person" to harass.[4] Cal. Gov. Code §§ 12941, 12940; Roby, 47 Cal. 4th at 705 ("the terms

---

[3] Because the Court determines that Defendants have failed to establish that there is no possibility of stating a racial harassment claim against Xayavong and that determination alone makes remand appropriate, it does not consider whether there is no possibility of stating a claim against Flint.

[4] Under FEHA, "employer" means "any person regularly employing five or more persons," while "person" means "one or more individuals." See Janken v. GM Hughes Elecs., 46 Cal. App. 4th

'discriminate' and 'harass' appear in separate provisions and define separate wrongs"). In other words, only an employer can be liable for discrimination, while both an employer and an individual employee can be liable for harassment. Reno v. Baird, 18 Cal. 4th 640, 647 (1998).

The California Supreme Court has outlined the type of fact patterns that tend to give rise to discrimination and harassment claims. See generally Roby, 47 Cal. 4th 686; Baird, 18 Cal. 4th 640. Discrimination claims are generally based on "the exercise of official actions," such as performance reviews, salary adjustments, and hiring and termination decisions. Roby, 47 Cal. 4th at 692. In comparison, "harassment claims are based on a type of conduct that is avoidable and unnecessary to job performance," like derogatory remarks, inappropriate physical contact, and exclusion from workplace social events. Baird, 18 Cal. 4th at 646. In short, "discrimination refers to bias in the exercise of official actions on behalf of the employer, and harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace." Roby, 47 Cal. 4th at 707.

Despite the different contours, discrimination and harassment claims can share the same underlying allegations. The California Supreme Court has held that discriminatory conduct can support a harassment claim when coupled with "hostile social interactions in the workplace." Id. In such cases, official employment actions can have "a secondary effect of communicating a hostile message." Id.

**B.   Application**

Defendants argue that Plaintiff cannot state a racial harassment claim against Xayavong because the "alleged mis-conduct is comprised of facially neutral personnel actions" that cannot form the basis of "individual liability on the part of California people managers under FEHA." Opp. at 5. Plaintiff contends that she states harassment claims

---

55, 65 (1996).

against Xayavong because Xayavong's alleged actions "were outside the scope necessary to perform [her] supervisorial [role]." Motion at 8–11.

FEHA prohibits a broad range of harassment, including (a) verbal harassment (e.g. epithets, derogatory comments, or slurs), (b) physical harassment (e.g. assault or other physical interference with work), and (c) visual harassment (e.g. derogatory cartoons or posters). Cal. Code Regs. tit. 2, § 11019; see also Ramirez v. Little Caesars Enterprises, Inc, No. 2:18-CV-07993-AB-JPR, 2018 WL 5816107, at *5 (C.D. Cal. Nov. 2, 2018). To give rise to a harassment claim, the conduct at issue must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive work environment." Fisher. v. San Pedro Peninsula Hosp., 214 Cal. App. 590, 609 (Cal. Ct. App. 1989) (citations omitted).

Here, Plaintiff may be able to state a racial harassment claim against Xayavong. The key allegations that support this claim are the "negative comments" that Xayavong made publicly about Plaintiff from 2019 to 2020. See Complaint ¶¶ 53–56. Although the complaint does not include any specific examples, it makes clear that the comments tended to publicly demean and belittle Plaintiff. See, e.g., id. ¶ 53 (Xayavong "would downplay [Plaintiff's] work contributions" and imply she "was not capable of performing her work"); id. (Xayavong "blamed" Plaintiff for "[her co-workers'] poor work performance"); ¶ 56 (Xayavong commented at meetings that Plaintiff "did not know what she was doing").

The public nature of these comments, in particular, tends to support a harassment claim. Providing an employee with feedback that their work product needs improvement may very well part of a "supervisor's managerial role," but repeatedly and gratuitously singling her out and criticizing her in front of her colleagues may convey a hostility that gives rise to a claim for harassment. See Roby, 47 Cal. 4th at 708–09 (comments amounted to "hostile social interactions" where they were "unrelated to [defendant's] managerial role, engaged in for her own purposes"); see also Janken v. GM Hughes Elecs., 46 Cal. App. 4th 55, 65 (1996) (harassment "consists of actions outside the scope of job

8

1  duties which are not of a type necessary to business and personnel management").

2  Xayavong's other alleged conduct could provide further support for a harassment
3  claim. While the conduct may be fairly characterized as "official employment actions," it
4  could also be interpreted as sending a message of hostility. For example, Xayavong
5  allegedly denied Plaintiff's vacation request without any basis and "did nothing to plan"
6  Plaintiff's anniversary party while planning social events for other Bayer employees. Id.
7  ¶¶ 49, 51–52. In connection with Xayavong's repeated public criticisms of Plaintiff, these
8  actions could be taken to convey hostility toward Plaintiff. See Roby, 47 Cal. 4th at 709
9  ("acts of discrimination can provide evidentiary support for a harassment claim").

10  The complaint could further support an inference that the alleged misconduct may
11  have been based on Plaintiff's race. Plaintiff was the only African American on her team,
12  and she was singled for differential treatment over several years. She allegedly received
13  lower pay, fewer opportunities, more critical reviews, and less favorable treatment than her
14  non-African American colleagues. See, e.g., id. ¶ 26 (Plaintiff "did not receive the same
15  pay grade as her Asian co-workers"); ¶ 39 (Plaintiff did not receive "the same
16  opportunities as her co-workers"). The multi-year pattern of disparate treatment could
17  suggest the alleged harassment was based on race.

18  Defendants' argument that the "alleged mis-conduct is comprised of facially neutral
19  personnel actions" is not persuasive. Opp. at 5–6. Defendants do not address Xayavong's
20  year-plus practice of publicly demeaning Plaintiff in front of her peers. Defendants instead
21  focus solely on "personnel actions," such as "disagreements with performance reviews,
22  denied vacation requests, handling of her internal complaints, salary and the like." See id.
23  at 5–7. But Xayavong's public and repeated ridicule of Plaintiff—especially in connection
24  with certain personnel actions—may support a harassment claim under FEHA.

25  **IV.   CONCLUSION**

26  To be certain, the Court does not hold that the complaint states a claim for racial
27  harassment under FEHA against Xayavong. It only holds that the complaint could state
28  such a claim, and thus Defendants have failed to establish fraudulent joinder. See Chew v.

United States District Court
Northern District of California

Williams Lea Inc., No. C07-03525 CRB, 2007 WL 2428052, at *3 (N.D. Cal. Aug. 22, 2007) (ordering remand because "this is not a case where a plaintiff cannot under any circumstances make a claim against the non-diverse defendant"). Thus, the Court grants the Motion to remand this action to the Superior Court for the State of California, County of Alameda.

**IT IS SO ORDERED.**

Dated: August 20, 2021



CHARLES R. BREYER
United States District Judge